UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 23-cv-24513-FAM

HANNAH GORMAN,
individually and on behalf of her minor child L.T.G.

Plaintiffs,

v.

BREEZE CONDOMINIUM ASSOCIATION, INC,
NAUTICA MANAGEMENT, LLC,
and RICHARD MULLER.

Defendants.
_______________________________________/

**FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiffs, Hannah Gorman, individually and on behalf of her minor child L.T.G, ("Plaintiffs"), hereby file this First Amended Complaint against Defendants, Breeze Condominium Association, Inc, Nautica Management, LLC, and Richard Muller, ("Defendants"), and in support thereof state and allege as follows:

1. The Court has original jurisdiction pursuant to 42 U.S.C. §1331, 42 U.S.C. § 3613, because this lawsuit is brought under the Fair Housing Act, 42 U.S.C. § 3601 *et seq*, and supplemental jurisdiction under 28 U.S.C. § 1291, over Plaintiff's claims under the Florida Fair Housing Act, § 760.20, *et seq*.

2. Venue is proper under 28 U.S.C. § 1391(b) as this is the district in which the events giving rise to Plaintiff's claims occurred, and where the subject property and Defendants reside and/or do business within.

3. Under the FHA, it is unlawful to discriminate against a buyer, renter and/or "any person associated" therewith for reasons of disability, 42 U.S.C. § 3604(f)(1).

4. Discrimination includes: "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling[.]"42 U.S.C. § 3604(f)(3)(B).

5. "Any person or entity engaging in prohibited conduct – i.e., refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a person with a disability an equal opportunity to use and enjoy a dwelling – may be liable" unless they fall within the very narrow exceptions to the FHA's coverage. Neither condominium associations, nor property management companies are exempted from the FHA's requirements.

## PARTIES

6. Plaintiff, Hannah Gorman, (hereinafter "Gorman"), a resident of Miami-Dade County, Florida, and otherwise *sui juris*. Gorman is the mother and guardian of her son L. T. G., a minor, resident of Miami-Dade County, Florida, and otherwise *sui juris*.

7. Gorman and L.T.G., are "aggrieved" persons under 42 U.S.C. 3602 (i)(1)(2).

8. Defendant, Breeze Condominium Association, Inc, (hereinafter "Breeze Condo" or "Association"), a Florida not for Profit Corporation, licensed to and doing business in Miami-Dade County, Florida, that operates a condominium building located at 1555 N. Treasure Dr., North Bay Village, FL 33141, (hereinafter "Subject Premises").

9. Defendant, Nautica Management, LLC, (hereinafter "Nautica Management"), is a Florida Limited Liability Company, licensed to and doing business in Miami-Dade County, Florida, that manages Breeze Condominium Association.

10. Defendant, Richard Muller, (hereinafter "Muller" or "Defendants" collectively with Defendant, "Breeze Condo" and Defendant, "Nautica Management"), is Licensed

Community Association Manager (LCAM), an agent for Breeze Condo, Manager and CEO for Nautica Management, a resident of Miami-Dade County, Florida, otherwise sui juris.

11. The rental unit at issue is a "dwelling" within the meaning of 42 U.S.C. § 3602(b), and "dwelling units" within the meaning of 24 C.F.R. § 100.21.

## GENERAL ALLEGATIONS

12. Nicholas Tomlinson is the father of L.G.T and an individual with a disability under 42 U.S.C. §3602(h), who requires the use of an emotional support animal (ESA). Therefore, a member of a protected class under the Fair Housing Act from unlawful discrimination by virtue of his disability.

13. Gorman was associated with a person with a disability and accordingly, covered persons under 42 U.S.C. § 3604 (f).

14. Breeze Condo is a "person" who operates a multifamily dwelling, the subject homeowner's association at the center of this litigation, located at 1555 N. Treasure Dr., North Bay Village, FL 33141, and the subject property to this action.

15. Nautica Management is employed as the agent and property management firm for Breeze Condo.

16. Muller was at all times relevant to the events described herein the property manager for Breeze Condo, acting within the scope of his position with regard to managing the operations, and enforcing the declarations, covenants, rules, and regulations of the Association.

17. On or about April 4, 2022, Gorman and Nicholas Tomlinson submitted a rental application for Unit. 304, at 1555 N. Treasure Dr., North Bay Village, FL 33141 within Breeze Condo, including the information of Mr. Tomlinson's ESA "Onyx".

18. At the time Gorman was 8 months pregnant.

19. On or about April 12, 2022, Gorman and Mr. Tomlinson, entered into a one-year lease agreement with Jeffrey Cohen, the owner of Unit. 304, at 1555 N. Treasure Dr., North Bay Village, FL 33141, under the rules and regulations of Breeze Condo, and managed by Nautica Management.

20. On or about April 22, 2022, Gorman and Mr. Tomlinson move into the subject property.

21. On May 29, 2022, Gorman submitted an application to Nautica Management on behalf of Mr. Tomlinson, for his ESA, "Onyx" before the baby arrival, including the "Pet Form", photographs, letter from psychiatrist.

22. On June 6, 2022, Gorman and Mr. Tomlinson contacted Nautica Management to follow up on the status of the application for Mr. Tomlinson's ESA dog.

23. On June 14, 2022, Muller sent an email to Gorman and Mr. Tomlison denying the application for the ESA to move into Breeze Condo, outlining the decision was made on the because of his size and breed.

24. On June 15, 2022, Gorman replied to Muller's email providing additional details and requesting information as to how to have the decision reconsidered, including a copy of the HUD's notice on the fair housing act and assistance animals.

25. Gorman called Muller to discuss his last email and check if he received her follow up email with the HUD notice. Muller acknowledged receipt and advised that he had seen the notice many times before in his line of work and confirmed that the board had been presented with the information and supporting evidence. Mueller said that he doesn't make decisions on these matters, the Board of Directors does, and he enforces them. Gorman describes the call as hostile

in which Muller appeared annoyed at Gorman questioning their reasons for the decision and questioned Gorman on when exactly Onyx became an ESA.

26. On June 15, 2022, Muller replied to Gorman's request, advising that the decision has not been made lightly, the matter was discussed at length with their attorney and as such would not be reconsidered.

27. The same day Gorman contacted the real estate agent for her landlord, to explain their situation and secure support for filing complaint with HUD, because she did not want the issue to cause any problems for Mr. Cohen, her landlord or impact their lease.

28. On July 19, 2022, HUD accepts complaint of housing discrimination filed by Nicholas Tomlison and FCHR will take on the investigation.

29. Defendants were made aware that Mr. Tomlison's dog was an ESA and not a pet, and Plaintiff was requesting reasonable accommodation on behalf of her L.G.T.'s father ESA, (verbal, supported with documentation from a medical professional).

30. On January 24, 2023, Gorman sent a text message to her landlord's real estate agent enquiring about plans for renewal of lease due on April 30, 2023.

31. On or about January 28, 2023, Mr. Tomlison moved out of Unit 304.

32. On January 31, 2023, Gorman sent another text message to the real estate agent regarding the renewal of lease, to which the agent replied, "I believe renewing is the plan…will reconfirm shortly" also asked if Mr. Tomlinson will be part of the renewal. Gorman replied indicating, "It will be just me and L.G.T with Nick being a regular visitor."

33. On February 24, 2023, Gorman received an email from the real estate agent advising that Gorman's lease for Unit 304 would not be renewed when it expired on April 30, 2023.

34. Gorman replied stating her disappointment and asking whether there was a reason, when she didn't receive a response, Gorman made multiples attempts to talk to Jeffrey Cohen, her landlord and Romina, his real estate agent leaving voice mails.

35. On March 7, 2023, Romina returned Gorman's calls following up on the non-renewal determination, asking whether she was aware of the reason why she is not being considered for renewal. Romina advised that the law does not require a reason, and she was not aware of any reason. Romina confirmed they planned to rent the property again, but she said that she was not party to any information and could not provide a reason to Gorman, and she was in the middle and simply carries out landlord instructions.

36. On March 14, 2023, Gorman signed a lease with Renata Oropallo for Unit. 311, within Breeze Condo. Renata Oropallo sent a copy of the lease to Nautica Management for approval.

37. On March 15, 2023, Muller sent an email to Renata Oropallo, copying some members of the Board indicating "We received third hand email today indicating that you signed a lease with Hannah Gorman recently. All leases require approval by the board of directors. Please clarify this now." To which Ms. Oropallo replied that had signed a lease. Oropallo sent the lease to Nautica Management for approval, and forwarded the email with a copy of the lease that was sent to Elaine, an employee at Nautica Management.

38. On March 21, 2023, Gorman sent an email in reply to Ms. Oropallo's email with a copy of the lease for approval to Muller and the Board, following up if anything further was required.

39. On March 21, 2023, Muller replied in response to the email sent on March 15, 2023, with the lease, stating that after careful consideration the Board of Directors has declined the lease presented for Unit. 311, attaching the official response letter which states:

> Tuesday, March 21, 2023
>
> Greetings:
>
> Thank you for submitting your tenant's rental application to us. We regret to inform you that your tenant's application has been considered by the board of directors and will not be approved. The denial is based on grounds including but not limited to a material representation on the tenant's initial application dated on or about April 13, 2022, for lease and that of an ongoing legal matter the tenant and her companion have filed against the association that remains ongoing. The ongoing legal matter has already cost the association thousands of dollars and has the propensity to cost thousands of more dollars along with increasing the already expensive insurance rates for the association.

40. Defendants denied Plaintiff and L.G.T.'s father's request for reasonable accommodation of Breeze Condo rules, to allow L.G.T.'s father to have an Emotional Support Animal in Unit 304 which was necessary to afford Gorman's family the equal use and enjoyment of their home and enjoyment of common and public areas of housing.

41. Further, Defendants with knowledge of Plaintiffs' protected class status, willfully retaliated against Plaintiff by denying her rental application for Unit 311, and potentially the opportunity of renewal of her current Unit 304.

42. Due to Defendants' discrimination, Plaintiff was forced to search for a new place to rent, with the pressure of moving within a month with a baby, because they were not allowed to live in Breeze Condo.

43. Plaintiff ultimately found a rental property and on April 25, 2023, moved out of Breeze Condo.

44. Plaintiff was distraught over the situation as she had recently lost her partner who suffered a mental health decline, and was forced to moved, incurring additional expenses as single mother, and the current rent market situation.

45. Defendants, with knowledge of Plaintiffs' protected class status, willfully discriminated against Plaintiffs under the same terms and conditions that were applicable to all persons who were qualified or eligible renters.

46. As a result of Defendants' actions described above, Plaintiffs have suffered and will continue to suffer irreparable loss and injury including, but not limited to loss of a housing opportunity, humiliation, embarrassment, emotional distress, and deprivation of their right to equal housing opportunities.

47. Defendants' actions described above constitute a pattern, practice, and policy of housing discrimination on the basis of disability on prospective renters who request an assistance animal.

48. Defendants continue to engage in unlawful acts and the pattern or practice of discrimination described above. Plaintiffs have no adequate remedy at law. Plaintiffs have suffered and will continue to suffer irreparable injury from Defendants' acts and pattern, or practice of discrimination unless this Court provides relief.

49. Defendants knew they were violating the Fair Housing Act yet acted with deliberate disregard to Plaintiffs' rights under federal and state law. As a result of Defendants' discrimination, Plaintiffs also suffered non-economic injuries, such as mental anguish, grievous emotional distress, embarrassment, frustration, anxiety, humiliation, loss of capacity for the enjoyment of life, loss of personhood and civil rights, and other personal injuries resulting from Defendants' discriminatory actions.

50. Further, Defendants acts, conduct and/or omissions regarding Plaintiffs were intentional, malicious, and in wanton or reckless disregard of Plaintiffs' rights and feelings, entitling Plaintiffs to an additional award of punitive damages and/or exemplary damages. These losses are either permanent or continuing and Plaintiff will suffer these losses in the future.

51. Any other conditions precedent to the filing of this action have been satisfied or have been waived.

52. Plaintiff retained J. Courtney Cunningham, PLLC., to represent her in this action and agreed to pay a reasonable fee for their services.

**COUNT I – DISCRIMINATION**
**VIOLATION OF 42 U.S.C. §§ 3601, et seq.**

53. Plaintiffs repeats and reallege the allegations in paragraphs 1 - 52 above as though fully set forth herein.

54. L.G.T.'s father is an individual with a disability as defined by 42 U.S.C. § 3602(h), as such Plaintiff is a member of a protected class and aggrieved persons under 42 U.S.C. 3602(i).

55. Plaintiff, Gorman and L.G.T.'s father requested reasonable accommodation by Defendants in regard to the rules, policies, practices or services at Breeze Cond, because such accommodation was necessary to afford Plaintiffs' family the equal use and enjoyment of their home and enjoyment of common and public areas of housing.

56. Defendants, directly or through their agents, violated federal fair housing laws as follows:

(1) Defendants discriminated in the rental of, or otherwise made unavailable or denied, a dwelling to renter because of handicap in violation of 42 U.S.C. § 3604(f)(1)(A).

(2) Defendants discriminated in the terms, conditions, or privileges of the rental of a dwelling, or in the provision of services or facilities in connection with such dwelling because of handicap in violation of 42 U.S.C. §§ 3604(f)(2) and 3604(f)(3)(B).

(3) Defendants discriminated by refusing to make reasonable accommodations in regard to rules, policies, practices, or services, when such accommodations may have been necessary to afford a person with a handicap equal opportunity to use and enjoy a dwelling in violation of 42 U.S.C. § 3604(f)(3)(B).

57. The foregoing conduct of the Defendants in discriminating in the rental, or to make unavailable or deny, a dwelling to any buyer or renter because of their disability and need to use an ESA, is discriminatory and unlawful.

58. Defendants' actions were in total and reckless disregard of Plaintiffs' rights and indifferent to L.G.T.'s father's medical condition or needs.

59. As a result of this unlawful discrimination, Plaintiffs have suffered injury, loss of housing opportunity, damages, mental anguish, grievous emotional distress, embarrassment, shame, worry, frustration, and humiliation. These losses are either permanent or continuing and Plaintiffs will suffer these losses in the future.

**COUNT II - RETALIATION AND INTERFERENCE**
**VIOLATION OF 42 U.S.C. § 3617**

60. Plaintiffs repeats and reallege the allegations in paragraphs 1- 52 above as though fully set forth herein.

61. Plaintiffs are "aggrieved persons" as defined by 42 U.S.C. § 3602(i).

62. Plaintiffs exercised rights protected by 42 U.S.C. § 3601 *et seq*. and/or aided or encouraged others, namely L.G.T.'s father, to exercise or enjoy rights afforded by federal fair housing laws.

63. The Fair Housing Act, 42 U.S.C. § 3617, *et seq*., makes it unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise of, or on account of her or his having exercised, or on account of her or his having aided or encouraged any other person in the exercise of any fair housing right.

64. Defendants denied Plaintiffs' rental application for Unit 311, in retaliation due to L.G.T.'s father having filed a Housing Discrimination Complaint with HUD, because of Defendants denial of reasonable accommodation.

65. Defendants' intentional acts, directly or through their agents, constitute discrimination proscribed by federal fair housing law.

66. Defendants' actions, directly or through their agents, were intentional, wanton, willful and taken in disregard for the rights of others.

67. Defendants were personally involved in, authorized and ratified each and every discriminatory act in retaliation herein.

68. The retaliation provisions of the Fair Housing Acts have been broadly applied to reach *all practices* which have the effect of interfering with the exercise of rights under the federal fair housing laws."

69. Further, as a direct and proximate result of Defendants actions Plaintiffs have suffered irreparable loss and injury including but not limited to loss of housing opportunities, actual damages, humiliation, emotional distress, and deprivation of their right to equal housing opportunities.

**COUNT III - INTERFERENCE (WITH CONTRACT)**
**VIOLATION OF 42 U.S.C. § 3617**

70. Plaintiffs repeats and reallege the allegations in paragraphs 1- 52 above as though fully set forth herein.

71. Plaintiffs had a valid and binding contract with Renata Oropallo for the rental of the Unit. 311, located at Breeze Condo.

72. Defendants knew or should have known of their contract.

73. Defendants intentionally and improperly interfered with the contractual relationship between Plaintiffs and Renata Oropallo, by inducing or otherwise causing Renata Oropallo not to perform the contract.

74. Defendants had a no legitimate basis for interfering in the contractual relationship between Renata Oropallo and Plaintiffs.

75. The only basis for such interference was overt and blatant retaliation against Plaintiffs. Such a basis is not only illegitimate, but it is also unlawful and intolerable in modern society.

76. Defendants' intentional acts of interfering with Plaintiffs' contractual relationship were knowing and in reckless disregard of Plaintiffs' protected rights.

77. As a result of Defendants' actions, Plaintiffs suffered and are continuing to suffer actual damages, including, but not limited to monetary damages, humiliation, mental anguish, emotional distress, embarrassment, shame, worry and frustration. These losses are either permanent or continuing and Plaintiffs will suffer these losses in the future.

WHEREFORE, Plaintiffs, Hannah Gorman, individually and on behalf of her minor child L.T.G, demand judgment against Defendants, Breeze Condominium Association, Inc, Nautica Management, LLC, and Richard Muller, and any other owners, agents or representatives, if any, acting in concert and agreement with Defendants' discriminatory actions, and preventing discrimination in the future as follows:

a. That the Court declared that the actions of the Defendant violated the Fair Housing Amendments Act and the Florida Fair Housing Act by discriminating against persons with disabilities.

b. That the Court enjoined the Defendants from discriminating against Plaintiff and enjoining Defendants denying Plaintiffs the equal housing opportunity.

c. That the Court order Defendants to provide notice to all owners and tenants of the properties they own and operate of their rights under the Fair Housing Act, including their right to have accommodations because of a disability;

d. That the Court order that Defendants instruct all of its employees, agents, independent contractors and/or other persons who deal with the rental or management of any and all housing currently managed and/or controlled by Defendants of the terms of the Court's Order and the Fair Housing Act, Fair Housing Amendments Act and implementing regulations;

e. Enter declaratory judgment that the actions of Defendants, and any other owners, agents or representatives, if any, acting in concert and agreement with Defendants, are discriminatory against persons with disabilities and illegal under the FHAA.

f. Preliminarily and permanently enjoin Defendants, and its agents, employees and successors, and all other persons in active concert or participation with Defendants, from further discrimination against people with disabilities in residential real estate transactions.

g. Grant affirmative relief as may be necessary to remedy Defendants' past discriminatory practices and decisions, and any other owners, agents or representatives, if any, acting in concert and agreement with Defendants, and to insure Defendants, and any other

owners, agents or representatives, if any , acting in concert and agreement with Defendants, do not discriminate on basis of disability in the future including, but not limited to, fair housing training, monitoring and reporting;

h. Award actual and compensatory damages to compensate Plaintiffs for economic losses and damages, and non-economic injuries, such as emotional distress, loss of civil rights, and humiliation and embarrassment caused by the discrimination and unlawful steering by Defendants, and any other owners, agents or representatives, if any, acting in concert and agreement with Defendants, in an amount to be proven at trial;

i. Grant Plaintiffs an award of punitive damages and/or exemplary damages as a result of Defendants deliberate, intentional, overt, willful and flagrant discrimination, and any other owners, agents or representatives, if any, acting in concert and agreement with Defendants, in an amount that reflects the dual purposes of punishment and deterrence;

j. Grant Plaintiffs an award of attorney fees, costs, and pre-judgment and post-judgment interest incurred in bringing this action; and

k. Grant such other and additional relief that the Court deems just and equitable under the circumstances.

**THE PLAINTIFFS DEMAND A JURY TRIAL FOR ALL SUCH ISSUES SO TRIABLE IN THIS MATTER.**

Respectfully Submitted this February 6, 2024.

By: *<u>/s/ J. Courtney Cunningham</u>*
J. Courtney Cunningham, Esq.
FBN: 628166
J. COURTNEY CUNNINGHAM, PLLC
8950 SW 74th Court, Suite 2201
Miami, Florida 33156
T: 305-351-2014
cc@cunninghampllc.com
legal@cunninghampllc.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 6, 2024, an electronic copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system which will send notice of electronic filing to all parties and Counsel of record.

By: */s/ J. Courtney Cunningham*
J. Courtney Cunningham, Esq.
J. COURTNEY CUNNINGHAM, PLLC
8950 SW 74th Court, Suite 2201
Miami, Florida 33156
T: 305-351-2014
cc@cunninghampllc.com
legal@cunninghampllc.com

*Counsel for Plaintiff*